C. W. PORTER and Others v. W. H. BAXTER and Others.[1]

January 14, 1898.

Nos. 10,775—(229).

```
71   195
s82  346
```

**Partnership — Retiring Partner — Liability on Firm Contract — Principal and Surety.**

When a partnership is dissolved by mutual consent, one member retiring, and the business is continued by the other members under a new firm name, and notice of these facts is received by a party with whom the old firm has contracted for the shipment to it of merchandise for sale, on account of said party, the retiring member stands in the position of surety on the contract for the new firm as to merchandise thereafter shipped, and, with the knowledge and consent of said party, going into the possession of the new firm for the purposes of sale. And he remains liable on the contract if its terms and conditions are complied with by the other party thereto; but as a surety he is released from liability if such other party fails to perform on his part, or departs from or consents to a change or modification of the original terms and conditions.

Action in the district court for Hennepin county by the members of the firm of Porter, North & Phipps against the members of the firm of Baxter, Fillmore & Winchester to recover a balance of $1,-219.46 alleged to be due from defendants upon a sale of furniture under the written agreement mentioned in the opinion. In his separate answer defendant Baxter admitted the execution of the agreement, and alleged that he withdrew from the firm of Baxter, Fillmore & Winchester on November 17, 1893, and notified the plaintiffs of such withdrawal. From an order, Jamison, J., granting defendant Baxter's motion for a new trial, after a verdict against him for $1,050, plaintiffs appealed. Affirmed.

*Welch, Hayne & Hubachek,* for appellants.

Baxter could not withdraw from the firm and relieve himself

[1] Reported in 73 N. W. 856.

from his contract. Campbellsville v. Bradlee, 96 Ky. 494; Moore v. Duckett, 91 Ga. 752; Story, Partn. § 334; Parsons, Partn. §§ 395, 396; Merill v. Blanchard, 7 App. Div. 167. The evidence shows that plaintiffs never released Baxter in any manner.

*Brooks & Hendrix,* for respondent.

Baxter never consented to extend the time of delivery of these goods. If the contract was modified after Baxter retired, it could not bind him. Goodspeed v. Wiard, 45 Mich. 322. The goods were consigned, not sold. Hunt v. Wyman, 100 Mass. 198, 200; Sturm v. Boker, 150 U. S. 312, 329; St. Paul v. Nicolin, 36 Minn. 232; Metropolitan v. Benedict, 74 Fed. 182; Lenz v. Harrison, 148 Ill. 598; Thompson v. Barnum, 49 Iowa, 392; Williams v. Davis, 47 Iowa, 363; Alexander v. Tomlinson, 40 Ark. 216; Brown v. Hitchcock, 28 Vt. 452; Walker v. Butterick, 105 Mass. 237.

COLLINS, J.[2]

As we regard this case, it is not material whether the written agreement entered into between plaintiffs, as of the first part, and defendants, as of the second part, and incorporated into the complaint, be held to be a consignment contract or a contract for the purchase and sale of the stock of furniture therein mentioned. One thing is certain: that defendants were given the right to purchase any part of the furniture which remained unsold at any time within 120 days after January 1, 1894, and, further, that plaintiffs could, upon the expiration of this 120 days, extend the terms of the agreement for 120 days longer, and within this period of time defendants were obligated to fully pay for all unsold articles. It will be seen that under the concluding portions of the writing it might become either an executory or an executed contract for the purchase and sale of all or a part of the furniture.

For the purposes of this decision, we shall assume that, when this action was brought, in February, 1896, it had become one or the other as to all of the furniture then unpaid for, and we shall also assume, as did both parties from the beginning, that the contract, although signed by all as individuals, was between plaintiffs as co-

[2] BUCK, J., did not sit.

partners and defendants as co-partners, the fact being that at the time a co-partnership existed between the former as Porter, North & Phipps, and between the latter as Baxter, Fillmore & Winchester.

It stood conceded upon the trial that defendant Baxter withdrew from this firm by consent of his co-partners on November 17, 1893, and that within three or four days afterwards plaintiffs heard and knew of this fact; and that they also knew that the business was being carried on by the two remaining members of the old concern, under the firm name of Fillmore & Winchester, defendant Baxter having no further interest. It was also conceded that a portion of the furniture covered by the contract was not shipped by plaintiff until some time subsequent to January 14, 1894, and was then received by the members of the new firm, and placed in their stock, although billed to Baxter, Fillmore & Winchester. The value of that portion shipped after January 14, 1894, exceeded $3,000,—an amount greatly in excess of the balance claimed to be due when this action was brought. This, as has been stated, was long after Baxter ceased to be a member of the firm, and long after plaintiffs were informed of his retirement.

Now, one of the conditions of the agreement entered into by defendant Baxter was that all of the furniture should be shipped before December 15, 1893. He did not become a party to any contract under the terms of which plaintiffs could ship in January, and there was no evidence upon which could have been based a finding that he consented in any way to a change or modification of, or any departure from, the requirement as to time for shipment from plaintiffs' warehouse in Wisconsin to defendants in Minneapolis, or that he knew of a change or departure. It is true that in September, and in behalf of the firm, Baxter wrote to plaintiffs, asking as a favor that, in case they gave notice to the latter, such part of the furniture as defendants directed should be left in store in the warehouse. But no effort was made to show that notice was given, or any further request made, or that the delay in shipping, and noncompliance with the condition as to the time within which it was to be completed, was caused by any act of either of these defend-

ants. So far as was shown by the record, the plaintiffs were responsible for the delay.

It may be assumed that by withdrawing from the firm Baxter could not relieve himself from the liability fixed in the contract, and that he would continue bound in accordance with its terms and conditions. But when plaintiffs were informed of his withdrawal, and that he was no longer a co-partner, they could not depart from the fixed terms and conditions, or change or modify them,—in effect, make a new contract,—and still hold him. Baxter's position as to subsequently shipped furniture was analogous to that of a surety upon a written instrument. He was, in fact, a surety for Fillmore & Winchester, who continued the business, and actually received the goods, as plaintiffs well knew. He remained liable for performance of the contract if its terms and conditions were strictly complied with. Upon complying with these terms and conditions, plaintiffs could enforce the contract as against him, but, if plaintiffs failed to perform, or if new terms and conditions were agreed upon between them and the members of the new firm, and were observed, instead of the old, Baxter could not be held. The court below was right when it granted a new trial, although it may not have had in mind the grounds upon which we put the affirmance of the order appealed from.

Order affirmed.